# Exhibit B



David N. Glaser, M.D.
*Medical Director*
Psychiatry & Neurology
Forensic Psychiatry

David Brian Freeman, Ph.D., ABPN
*Clinical Director*
Clinical Psychology
Neuropsychology

Michael C.C. Lilienfeld
*Executive Director*

February 28, 2011


Joe Shemaria, Esq.
Attorney at Law
1801 Century Park E #2400
Los Angeles, CA 90067


### Re:   Peo. v. Kenney Case

Dear Mr. Shemaria:

At your request, I performed an Independent Medical Evaluation on Ms. Trina Kenney on October 22, 2010 in my Encino, California office.  There was a total face-to-face interview contact time of 3.4 hours on the first office visit. In addition to the interviews, Ms. Kenney was administered a battery of psychological tests that were scored and interpreted in this office.

> **WARNING:  Psychiatric reports are highly confidential; the contents should not be revealed to anyone except those professionals who are directly involved in the processing of the matter.  It is particularly important that the contents of a psychiatric report not be shown or given to the subject of the examination.  Major distortions and misinterpretations of the report may occur and unnecessary emotional upset of the individual would result.  This report should not be read to the individual, even in part, for the above reasons. Any person ignoring or violating this admonition must assume full responsibility for the individual's subsequent reactions.**

In addition to the above meeting, Mr. Kenney met with me on the following dates:

B1

February 28, 2011
Re:  Matter of Trina Kenney
Page 2

      November 9, 2010 along with her mother for 1.4 hours
      November 17, 2010 for 2.1 hours
      December 1, 2010 for 2 hours
      December 15, 2010 along with her mother for 2.0 hours

In addition to meeting with Ms. Kenney on five occasions, I also had the opportunity to meet with her parents, Riva and Joel Columbo, on several occasions.    They were both in my office on November 4, 2010 for gathering of information. Also, there were hours of contact with Ms. Kenney and her mother together.

Ms. Trina Kenney was admonished that that what we discussed would not be completely confidential. It was made clear to her that the sole reason for our forensic and clinical contact was the current criminal matter.  She appeared to fully appreciate the significance of these admonitions.

The ultimate opinions expressed in this report are based upon a synthesis of psychiatric forensic data from two sources:

1. Clinical interview (both Mental Status Examination, as well as factual information)

2. Results of the psychological testing

3. Review of records, reports, and documents

The following records, reports, and documents were reviewed and considered:

1. Plea Agreement with attachments
2. Marital therapy notes of Ruben Gomez, Ph.D
3. Website address of Evangelist Rick Kenney
4. Probation Report
5. Pre Sentence Investigation report
6. Restraining order documents against Alcina Talbott
7. Reports of private investigator re: Talbott violations

B2

February 28, 2011
Re:  Matter of Trina Kenney
Page 3

The following tests were administered:

1. Minnesota Multiphasic Personality Inventory-2 ("M.M.P.I.-2")
2. Millon Clinical Multiaxial Inventory-III ("M.C.M.I.-III")
3. B. A. I. (Beck Anxiety Inventory)
4. B. D. I. (Beck Depression Inventory)
5. W.P.S.I. (Wahler Physical Symptoms Inventory)
6. W. M. T. (Green's Word Memory Test)
7. T. O. M. M. (Test of Malingering Memory)

The following are the tests results:

## PSYCHOLOGICAL TESTING:

## MMPI-2 (Minnesota Multiphasic Personality Inventory – 2)

Raw Scores
F=12; L=2; K=13; S=19; HS=17; D=32; HY=32; PD=29; MF=31; PA=20;
PT=21; SC=21; MA=19; SI=32

T Scores
F=79; L=42; K=46; S=42; HS=73; D=75; HY=73; PD=79; MF=62; PA=85;
PT=62; SC=63; MA=56; SI=55

## MCMI-III (Millon Clinical Multiaxial Inventory-III)

Raw Scores
X=113; Y=11; Z=18; Scale 1=8; Scale 2A=10; Scale 2B=15; Scale 3=16;
Scale 4=12; Scale 5=10; Scale 6A=11; Scale 6B=9; Scale 7=8; Scale
8A=14; Scale 8B=3

BR Scores
X=70; Y=51; Z=73; Scale 1=66; Scale 2A=76; Scale 2B=87; Scale 3=91;
Scale 4=48; Scale 5=48; Scale 6A=73; Scale 6B=68; Scale 7=32; Scale
8A=77; Scale 8B=58

B 3

February 28, 2011
Re: Matter of Trina Kenney
Page 4


<u>B. A. I. (Beck Anxiety Inventory)</u>
The score was 25.

<u>B. D. I. (Beck Depression Inventory)</u>
The score was 22.

<u>W.P.S.I. (Wahler Physical Symptoms Inventory)</u>
The score was 1.2.

<u>W. M. T. (Green's Word Memory Test)</u>
Passed
<u>T. O. M. M. (Test of Malingering Memory)</u>
Passed

Were this report to be read by Trina Kenney, Ms. Kenney's parents, or Rick
Kenny, they would likely be disturbed by the content. In addition to the
admonition at the beginning of this report, this psychiatrist again urges all
decision makers with respect to disseminating this report to avoid all such
disclosure as it could cause irreparable harm to all parties as well as the
marriage of Rick and Trina Kenney.


## FINDINGS AND OPINIONS

Although there is no exculpable psychiatric defense available for Trina
Kenney, there are multiple impacting mitigating factors that should be
considered with regards to her sentencing. It is noteworthy that Ms. Kenney
has and does accept responsibility for her actions that led to her crimes.

There are psychiatric factors that should be considered. The following is an
outline of what is most pertinent:

1. Ms. Kenney has a longstanding serious depression requiring
   substantial doses of antidepressants. This treatment has been
   required since age 16 for over half of Ms. Kenney's life. Despite
   taking antidepressant medication, Ms. Kenney has not been treated

B 4

February 28, 2011
Re:  Matter of Trina Kenney
Page 5

by a psychiatrist, has not received needed psychotherapy, and her recurrent Major Depressive Disorder has been under-treated.

2. Ms. Kenney has a longstanding and preexisting Personality Disorder with Narcissistic, Avoidant, Dependant, and Borderline Features. This disorder, untreated as it has been, has profoundly impacted her day to day functioning, her life decisions, and her judgment. Ms. Kenney does not feel complete as a person unless she is with someone. To some degree, this chronic state of child like dependence was perpetuated when she was a child. Ms Kenney is terrified of being alone.

3. Ms. Kenney has been sexually victimized by 2 different perpetrators at a very young age. The younger the age of victimization the greater the likelihood of psychological damage. The greater the extent of victimization with a girl, the greater the likelihood that they will perpetuate this victimization as an adult. Ms. Kenney was sexually molested by a live-in housekeeper and the brother of this person from age seven to nine.

4. Ms. Kenney reports and believes that she has been physically victimized by her own parents. She was raised in a strict and religious household. She was hit with belts, small pieces of wood and cutlery. She claims she avoided going out in the public due to visible bruises and welts. Her father allegedly gave her a black eye on more than one occasion.  As a girl she was home schooled. Therefore, it is possible, in the context of the mother's extreme control over her social life, that she avoided detection by authorities or D.C.S. because she did not attend public school. There is no external corroboration on this factor.

5. Trina Kenney's developmental years were permeated by excessively controlling parents, who profoundly restricted Ms. Kenney's social life. Her relationship with her mother was particularly problematic. Her mother dictated those with whom she could have contact. Those who were not Caucasian and of the same degree of Religiosity were out of bounds.

B5

February 28, 2011
Re:  Matter of Trina Kenney
Page 6

6. Trina Kenney perceives that she has been victimized by what she perceives to be her parents' fanatic Religiosity that she has experienced as punitive. She terms her parents' beliefs as a cult. Sometimes her mother would explain her behavior as emanating from the devil inside of her.

7. Trina Kenney has profoundly low self esteem. This is not just some theoretical construct.  At the minimum, it fueled her choice in mates and, at least partially, provides some glue that keeps her in an abusive relationship. The childhood verbal and physical abuse, her chronic depression, the limits upon her options due to her Personality Disorder, and her rational awareness that her husband is a verbally and physically abusive alcoholic, who is a chronic liar and with antisocial behavior, reinforce partially that she can do no better.

8. Ms. Kenney is not particularly intelligent or sophisticated. Indeed, her profound psychopathology makes her appear less intelligent than is the case. This factor, in conjunction with her dependency, makes her particularly vulnerable to and needy of her husband.

9. Ms. Kenney's marital relationship is profoundly pathological.  Her husband has exploited her vulnerability.  He has been financially supported by Ms. Kenney and there is hard evidence of longstanding antisocial behavior. Though Ms. Kenney has been intermittently reticent to talk about the extent of her husband's history of wrongdoing (as well as his religious hypocrisy), Ms. Kenney's parents provided details of longstanding behavior that has not been in the best interests of Ms. Kenney.

10. Ms. Kenney's husband Rick hides behind his Religiosity (he is a "preacher" and his website provides some forensic data). Though information is limited diagnostically because Rick Kenney was never interviewed and most of the data originated from the sources of Ms. Kenney and her parents, this is a critical variable. However, some of the legal documents reviewed and Dr. Gomez's records support this contention.

B6

February 28, 2011
Re: Matter of Trina Kenney
Page 7

11. There is complimentary psychopathology that provides powerful forces to maintain the marital relationship. Rick Kenney has been predatory with Trina Kenney and Trina has been vulnerable to a man with the psychological make up of Rick Kenney. They need each other psychologically. There are powerful conscious and unconscious forces keeping them together.

12. As a partial result of Ms. Kenney's rocky development, Ms. Kenney is desperately dependant upon who she perceives to be a powerful mate, who to some degree makes her feel whole. Though Rick has victimized Ms. Kenney on multiple occasions (her parents understandably provide a history that has more depth and breadth), Ms. Kenney has an intuitive appreciation that her children might be taken from them were she to leave.

13. There is hard forensic evidence that years before the subject events a marital therapist documented serious psychopathology in the marriage. This psychologist went as far as writing that The Stockholm Syndrome explains how it is that Ms. Kenney remained in this disturbed relationship. Dr. Gomez's notes provide hard forensic data that a neutral party recognized antedating that subject events that Ms. Kenney was in an abusive marriage. Considerable forensic psychiatric weight is given to those records.

14. To some degree, powerful psychological forces, both conscious and unconscious, lead Ms. Kenney to recapitulate some of the psychopathology of her developmental years with her parents. This includes, but is not restricted to, physical abuse, verbal abuse, control, and religious fanaticism (though there is no evidence whatsoever that Ms. Kenney's parents are hypocritical as is Rick and have acted repeatedly antisocially as has Rick).

15. In contrast to the longstanding and preexisting antisocial behavior of her husband Rick, Ms. Kenney had no history of antisocial behavior antedating her union with Rick. In fact, shortly after turning age 18, Ms. Kenney met Rick passing out Bibles and within 2 days, he

B 7

February 28, 2011
Re: Matter of Trina Kenney
Page 8

convinced her to run away. Months passed before Ms. Kenney had contact with her family. Ms. Kenney essentially escaped from the clutches of her parents and into the arms of a probably charismatic man who presented as a solution to her life woes. Ms. Kenney does however acknowledge that she was aware of Rick's antisocial past when she married him. It is impossible to ferret out what responsibility Ms. Kenney bears for her past contact with law enforcement in any attempt to determine what antisocial behavior emanated solely from Rick, from Trina, or from the both of them.

16. The convergence of multiple environmental circumstances (disturbed development, sexual victimization, parental physical abuse, parental over-control, imposed perceived fanatic Religiosity) and a mixture of serious character pathology and chronic depression led Ms. Kenney to escape her perceived problems by marrying a sociopathic man who she had known for a brief period of time. The same factors that keep them together presently are very different from the ones that initially attracted each to each other.

17. Poor judgment knows no bounds and transcends otherwise mentally healthy individuals, those with psychopathology, intelligence, and sophistication. Years antedating the subject events, by any measure, Ms. Kenney exercised poor judgment eloping. Trina Kenney had no way of knowing that the forces that attracted her to Rick would be very different from the forces that maintain their pathological relationship. Ms. Kenney has never been introspective, psychologically minded, or exercising of good judgment in her life decisions. Some of this behavior has been driven by non-volitional factors where free will is not entirely applicable.

18. Ms. Kenney's marital life has been, by all measures, pathetic. She has put up with her husband's outrageous and illegal behavior on multiple occasions. Ms. Kenney, partially due to her low self esteem, believes that she could not do any better. In a moment of extreme candor, Ms. Kenney states that were it not for her children, she would have left Rick. Ms. Kenney's parents have been quite candid about their disdain for Rick and their sense of helplessness in

B8

February 28, 2011
Re:  Matter of Trina Kenney
Page 9

attempting to free their daughter (conceptualized as a child) from the marriage.  Likewise, they have expressed fear of Rick as well as fear from Alcina

19. The well documented events with Alcina added to Ms. Kenney's life stress.  Indeed, while aliases are well known to be highly linked with antisocial behavior, Ms. Kenney's initial use of aliases was in her desperate attempt to escape the stalking of Alcina.

20. Ms. Kenney's parents have done their best to deal with the threats to their own wellbeing and lives by both Alcina and Rick.  Indeed, their strict boundaries with respect to keeping Rick at bay (in their self interests) have created understandable tension in Ms. Kenney's marriage.

21. Rick and Trina Kenney were both intimately involved in the subject events.  In no way is this to imply that Ms. Kenney does not accept responsibility for her bad behavior.  Rick's involvement provided Ms. Kenney a false sense of security and provided some modeling as, by his own admission (in his Website and directly to Ms. Kenney), he had longstanding experience acting antisocially.

22. Ms. Kenney is highly ambivalent regarding her relationship to Rick.  On more than one occasions during office contact, Ms. Kenney refused to talk negatively about Rick for fear of losing her children.  It is a love/hate relationship fueled by multiple factors.

23. Ms. Kenney is so mistrustful of her own husband that she believes he has secretly "cut a deal" to avoid prosecution.  Irrespective to whether this is a misguided belief; this speaks loudly to her sense of insecurity and vulnerability.

24. The initial antisocial subject events were driven by the perfect storm of converging factors: an identity of being a chronic victim, chronic poorly treated depression, a personality disorder, a means to maintain a relationship to a strong, charismatic, antisocial man, and a means to compensate for his financial irresponsibility. Once

B9

February 28, 2011
Re:  Matter of Trina Kenney
Page 10

started, they both slid down the slippery slope of greed in the name of need.  It is impossible to apportion responsibility between Rick and Trina Kenney. However, Ms. Kenney, while accepting responsibility for her wrongdoing in the subject matters, is of the conviction that, by virtue of the accusation and plea, she is accepting more responsibility than her husband. From her perspective, this is experienced as unfair.

25. Ms. Kenney's antisocial behavior is situational and, although she now appreciates it was wrong, it is noteworthy that she has otherwise lived a prosocial life before her marriage to Rick.  Her history, the results of the psychological testing and her mental status examination reveal that she does not have deep seeded antisocial character pathology. This factor alone, were competent mental health services offered, bodes well with respect to prognosis. Ms. Kenney is not a hardened criminal.

26. Ms. Kenney is terrified of the process of incarceration. She is fearful she will not receive any mental health services, especially continuation of her Zoloft (which should be switched to a medication such as Pristiq 50-100 mg).  Ms. Kenney is convinced somehow that her parents are in cahoots with Rick to obtain custody of her children. Ms. Kenney is frightened that the State might remove her children from Rick (this fear probably has some foundation).  Ms. Kenney requires over 5 years of multiple times/week dynamic psychotherapy to appreciate the roots of her multiple issues, many of which have been out of her control.  Up until the recent legal events, Ms. Kenney has been generally able to avoid facing her many problems.

27. To the most cynical of observers, it might be hard to believe one person could have experienced all these events. Indeed, there might be some exaggeration to her degree of childhood victimization. However, there is likely minimization of the issues, problems, and pathology in her marriage to Rick in her ultimate misguided attempt to protect him.  Ms. Kenney suffers from many levels of psychopathology that has, in conjunction to her marital environment,

ß 10

February 28, 2011
Re: Matter of Trina Kenney
Page 11

led her down the path of the current antisocial behavior. Whatever will be the directive of the Court with respect to Ms. Kenney's punishment, these factors should be considered both singularly as well as together.

Feel free to contact me if you have any questions about my findings or opinions.

Sincerely,

David N. Glaser, M. D.
Board Certified Forensic Psychiatry
Board Certified Psychiatry and Neurology
Qualified Medical Examiner
Board Member of American College of Forensic Psychiatry
DNG:mwv

B 11

# Exhibit C

# Christian Care Counseling
## 6020 Park Drive #2
## P.O. Box 26
## Wrightwood, CA 92397
## 1760 249-3803

**Wednesday, September 1, 2010**

To:                    Whom it may concern

From:                  Reuben P. Gomez, Ph.D.
                       Pastor/Psychologist

Subject:               Ms. Trina Lee Kenney; DOB 7/12/78.
                       (Parents: Mr. Joel Colombo and Mrs. Riva Colombo)

1.0 History: Trina and her husband, 'Rick', first came to this office for marital counseling November 12, 2003. Subsequent visit December 31, 2003. Observation continued due to social contact with the parents, and other activities living in Wrightwood. Also, several interventions were needed as a result of conflict in the home where Trina and Rick resided.

1.2 Presenting problem: Rick would leave the home, unannounced, and stay away for an indeterminate amount of time- not giving an explanation for his whereabouts nor activities during his absence. Preliminary observation: Dissociative Fugue, 300.13 DSM IV TR. Trina's efforts at coping with those episodes caused her a great deal of internal conflict (repressed angry frustration) and inability to separate herself from Rick (suggesting a developed 'Co-Dependency or Addiction To Rick's strong personality').

1.3 This behavior continues to the present causing serious conflicts in the marital relationship, parenting, financial responsibilities, and stability in the home.
Rick's absence has obligated Trina to manage the home alone without assistance. She has been the sole provider in the home having to find means of income and sustenance for the family. Resultant stress on her has affected her mood and mental state.

1.4 Parents, Joel and Riva, had consulted with this office regarding Trina and her situation. Their financial assistance has subsidized the welfare (food and housing) of the children, Trina and Rick. Nevertheless, Rick has continually shown hostility towards Joel and Riva adding to the tension in Trina's life.

2.0 There has been a marked change in Trina's conduct/behavior over the years. Best described as a deterioration in her thought process, choices and grasp of reality. Notable, are features of: Adjustment Disorder, 309.3 DMS IV TR (chronic), due to stressors regarding finances, living conditions, protection and care of her children without regular income and without the financial support of her husband Rick.

C1

2.1 It appears that if Trina's situation does not change she might progress to more serious behavioral problems suggesting possibility of Schizoaffective Disorder, 295.70 (Bipolar Type, with manic episodes. Ideation of self destruction and delusional visions and imagined interactions with others). Also, 297.1 Delusional Disorder - currently observed by parents and extended family members.

3.0 Conclusions:

1. Trina has experienced long term neglect and abuse from her husband. She continues in her efforts to reform her husband in spite of the reality that her efforts have not been effective.

2. She defends and protects Rick, sympathetically, believing that with love and support Rick will change. With the passing years she has, as a result, lost her ability to understand that her behavior enables Rick to continue on in his pattern of neglect and domination.*

3. Trina has been observed in a state of disequilibrium unable to focus on an issue at hand. There has been episodes of manic behavior - aggression, opposition, and delusional. When she is separated from Rick, from time to time, she demonstrates rational and logical thinking and expressed a desire to free herself from the double bind she in. Sadly, when Rick reappears she reverts to her enabling role.

4. It is recommended that she be given the benefit of long term treatment. That she be separated from her husband until she is able to protect herself from his demanding behavior.

* Note: reminiscent of The Stockholm Syndrome (copy attached).

C2