UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 10-00969-GHK | Date | February 13, 2015 |
|---|---|---|---|

| Present: The Honorable | **GEORGE H. KING, CHIEF UNITED STATES DISTRICT JUDGE** |
|---|---|

| Interpreter | None |
|---|---|

| Beatrice Herrera | Not Reported | James A. Bowman |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Trina Lee Kenney | NO | X | | Alyssa D. Bell | NO | | |

**Proceedings:**    **(In Chambers) Order re Defendant's Ex Parte Application for Early Termination of Supervised Release**

The Court has received Defendant Trina Lee Kenney's ("Defendant") "Ex Parte Application for Early Termination of Supervised Release" ("Ex Parte Application"), filed on January 20, 2015.  (See Dkt. No. 52.)  We find this matter appropriate for resolution without oral argument.  Having considered all of the papers filed in support of, and in opposition to, the Ex Parte Application, we rule as follows.

**I.    Background**

On October 7, 2010, Defendant pled guilty to one count of violating 18 U.S.C. §§ 1341, 2(b), for mail fraud.  (See Dkt. No. 14.)  On April 13, 2011, the Honorable A. Howard Matz sentenced Defendant to 41 months imprisonment and, upon release from imprisonment, supervised release for a term of three years.  (See Dkt. No. 34.)  Defendant was released and has been serving her term of supervised release since May 31, 2013.

Defendant filed the instant Ex Parte Application on January 20, 2015.  (See Dkt. No. 52.)  The Probation Office filed its position with respect to Defendant's requested relief on December 10, 2014 (hereinafter "U.S.P.O. Opp'n").  (See Dkt. No. 51.)  The United States filed its Opposition on February 3, 2015 (hereinafter "U.S. Opp'n").  (See Dkt. No. 53.)

**II.    Legal Standard**

Early termination of supervised release is governed by 18 U.S.C. § 3583(e), which requires the Court to consider factors set forth in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense, the need for deterrence, the need to protect the public, the need to provide defendant with training or medical care, and the relevant provisions of the Sentencing Guidelines."  United States v. Gross, 307 F.3d 1043, 1044 (9th Cir. 2002).  After considering the relevant § 3553(a) factors, the Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation,

CR-11 (09/98) | **CRIMINAL MINUTES - GENERAL** | Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."[1]  18 U.S.C. § 3583(e)(1); see United States v. Miller, 205 F.3d 1098, 1101 (9th Cir. 2000) (citing United States v. Lussier, 104 F.3d 32, 36 (2nd Cir. 1997)).  "The expansive phrase 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination."  United States v. Emmett, 749 F.3d 817, 819 (9th Cir. 2014).

The Ninth Circuit has cited the Second Circuit's decision in Lussier, 104 F.3d 32 (2d Cir. 1997), favorably for the holding that early termination of supervision is warranted where the defendant demonstrates changed circumstances, such as exceptionally good behavior:

> Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release . . . in order to account for new or unforeseen circumstances. Occasionally, changed circumstances – for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release – will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a).

Miller, 205 F.3d at 1101 (quoting Lussier, 104 F.3d at 36).  The Ninth Circuit has since explained that it is not necessarily required for a defendant to demonstrate undue burden or changed circumstances in order to be eligible for early termination, so long as the defendant meets the requirements of 18 U.S.C. § 3583(e)(1).  See Emmett, 749 F.3d at 819-20; United States v. Bainbridge, 746 F.3d 943, 948-49 (9th Cir. 2014).

## III.    Discussion

Defendant moves for early termination of her supervised release for several reasons.  First, she states that she is statutorily eligible for early termination, as she has served over nineteen months of her term "and her performance has been exemplary: she has had no violations of her supervised release, and no disciplinary incidents."  (Ex Parte Application at 1.")  Next, she states that she wishes to pursue a career in real estate.  She presents some evidence that she will be unable to obtain a real estate license, even if she were to pass the requisite licensing examinations, should she remain on supervised release.  Finally, she mentions that the travel restrictions imposed upon her have prevented her from volunteering with her husband's non-profit on one occasion.

The Probation Office and the United States oppose Defendant's Ex Parte Application.  The Probation Office points out that it submitted a violation report on May 1, 2014, alerting the Court to Defendant's violation of the conditions of her supervised release by failing to submit an accurate financial affidavit.  (See U.S.P.O. Opp'n at 1-2.)  According to the Probation Office, Defendant lied about participating in the sale of underage, sick puppies, and did not report the sale in her financial affidavit.  (Id. at 2.)  Defendant apparently denied her role in the sale of the puppies on several occasions and then finally admitted her involvement to her Probation Officer, but claimed that she did not know that the puppies were sick or underage.  (Id.)  The Probation Office negotiated with defense counsel to modify Defendant's conditions of supervised release, rather than have the

---

[1]  As required by the Ninth Circuit, in reaching a decision on a motion for early termination of supervised release, we must provide express reasons for our decision.  Emmett, 749 F.3d at 820-22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Court intervene to determine whether Defendant had violated the conditions of her supervised release.  (Id.)
The modification required, <u>inter alia</u>, Defendant to participate in a cognitive-based life skills program, which
was later changed to interactive journaling due to Defendant's transportation issues.  (Id.)  Defendant has been
subject to this additional condition for approximately seven months.  The Probation Office argues that the
puppy incident closely mirrors Defendant's behavior that gave rise to her federal conviction, <u>i.e.</u>, the sale of
often misrepresented and sick horses.  (Id. at 2-3.)  Given this similarity, the Probation Office contends it is
necessary for Defendant to remain on supervised release because "she continues to pose a risk of recidivism."
(Id. at 3.)  In addition, the fact that Defendant has repaid so little restitution to her victims is another basis for
the Probation Office's opposition to the Ex Parte Application.  (Id.)  Defendant was ordered to pay $277,609.50
in restitution and, according to the Probation Office, she has repaid only approximately $495.00 to date.  (Id.)

        The United States makes nearly the same arguments as the Probation Office in opposition to the Ex
Parte Application.  (See U.S. Opp'n.)  The United States also stresses Defendant's criminal background,
including several instances of engaging in fraudulent criminal behavior, to show that Defendant's supervised
release should not be terminated early.  (Id.)  The United States argues that neither the conduct of the Defendant
nor the interest of justice weigh in favor of terminating Defendant's supervised release early.  (Id.)

        To determine whether or not Defendant is entitled to early termination of her supervised release, we
evaluate the relevant 18 U.S.C. § 3553(a) ("Section 3553(a)") factors.  <u>See</u> <u>Gross</u>, 307 F.3d at 1044.

        Regarding the nature and seriousness of her underlying criminal offense, we agree with the United
States that the crime at issue was a serious offense involving fraud.  Defendant, who used at least twelve aliases,
defrauded approximately ninety victims out of over $200,000 by selling them sick, lame, and/or dangerous
horses.  Further, Defendant was verbally abusive towards her victims when they attempted to discuss with her
the problems with the horses they had purchased and when they sought a refund.  This Section 3553(a) factor
weighs against terminating Defendant's supervised release.

        As to the need for deterrence and to protect the public, Defendant's admitted role in the sale of puppies
last spring supports the Probation Office's concerns about Defendant's risk of recidivism.  As argued by the
Probation Office and the United States, Defendant's pattern of behavior with the sale of the puppies closely
mirrors her past criminal conduct.  For this reason, Defendant's involvement in this incident is worrisome.
Moreover, under facts such as these, it would appear that we are rewarding Defendant for engaging in activities
parallel to those that gave rise to her criminal conviction if we were to terminate her supervised release early.
That would seem to encourage, rather than deter, this behavior.  Thus, these factors weigh against terminating
supervised release here.

        Overall, Defendant's conduct does not support terminating her supervised release early.  We agree with
the United States and the Probation Office that Defendant's record while on supervised release for
approximately eighteen months has not been exemplary.  Although we have made no findings that Defendant
has violated the terms of her supervised release in the past, we consider the Probation Office's violation report
as some evidence suggesting Defendant has not complied with all the conditions of her supervised release.
Given that evidence, it appears that this is not the case of a defendant who has complied with every condition of
her supervised release.  <u>See</u> <u>United States v. Smith</u>, 219 F. App'x 666, at *1 (9th Cir. Jan. 23, 2007) (finding
defendant who failed to register change of address and missed two drug test appointments did not demonstrate
exceptionally good behavior to justify termination of supervised release); <u>United States v. Sabatino</u>, No. 02-CR-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

20067 JF, 2014 WL 6847779, at *2 (N.D. Cal. Dec. 3, 2014) (finding defendant who violated his release terms on one occasion did not demonstrate exceptional conduct and did not justify early termination of supervised release).  On the other hand, we appreciate Defendant's aspirations to become a real estate professional and acknowledge her compliance with most of the conditions of her supervised release.  Although commendable, we expect total compliance from a person on supervision.  See United States v. Bauer, No. 5:09-cr-00980 EJD, 2012 WL 1259251, at *2 (N.D. Cal. Apr. 13, 2012) ("compliance with release conditions, resumption of employment and engagement of family life [ ] are expected milestones rather than a change of circumstances rendering continued supervision no longer appropriate"); United States v. Grossi, CR 04-40127 DLJ, 2011 WL 704364, at *2 (N.D. Cal. Feb. 18, 2011) ("Mere compliance with the terms of supervised release is what is expected, and without more, is insufficient to justify early termination.").  On balance, Defendant's conduct weighs against terminating her supervised release.

In addition, we find the need to provide restitution to Defendant's victims weighs strongly against terminating her supervised release early.  As stated supra, Defendant still owes over $272,000 in restitution to her victims.  Requiring Defendant to serve her entire term of supervised release will help ensure that she continues to make her restitution payments timely.  See 18 U.S.C. § 3553(a)(7); United States v. Oak, 398 F. App'x 274, 275 (9th Cir. 2010) (affirming district court's denial of early termination of supervised release based upon "the finding that [the defendant] still owes more than $200,000 in restitution."); United States v. Sine, No. CR 02-079 KJM, 2012 WL 1901298, at *2 (E.D. Cal. May 24, 2012) (denying motion for early termination of supervised release because "of the need for continued payment of restitution").

In weighing the relevant Section 3553(a) factors, we conclude that Defendant has not demonstrated that her term of supervised release is too harsh or inappropriately tailored to reflect the seriousness of the offense, the need for deterrence, the need to protect the public, or the need to provide restitution to her victims.  See United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006) (concluding that it is the defendant's burden to demonstrate that early termination is justified).  We are not satisfied that terminating Defendant's term of supervised release is warranted by Defendant's conduct or that it is in the interest of justice.  See 18 U.S.C. § 3583(e)(1).

**IV.     Conclusion**

For the foregoing reasons, Defendant's Ex Parte Application for early termination of her three-year period of supervised release is **DENIED**.

**IT IS SO ORDERED.**

                                                          --        :        --

                                        Initials of Deputy Clerk              Bea